IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:14-CV-873-D

| | | |
|---|---|---|
| ANNA MARIE MATEUS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM AND** |
| v. | ) | **RECOMMENDATION** |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

In this action, plaintiff Anna Marie Mateus ("plaintiff" or, in context, "claimant") challenges the final decision of defendant Acting Commissioner of Social Security ("Commissioner") denying her application for a period of disability and disability insurance benefits ("DIB") on the grounds that she is not disabled. The case is before the court on the parties' motions for judgment on the pleadings (D.E. 24, 27). Both parties filed memoranda in support of their respective motions (D.E. 25, 28). The motions were referred to the undersigned magistrate judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (*See* D.E. 29). For the reasons set forth below, it will be recommended that the Commissioner's motion be allowed, plaintiff's motion be denied, and the final decision of the Commissioner be affirmed.

I.    BACKGROUND

A.    Case History

Plaintiff filed an application for DIB on 21 May 2013, alleging a disability onset date of 1 February 2011. Transcript of Proceedings ("Tr.") 12. The application was denied initially and upon reconsideration, and a request for hearing was timely filed. Tr. 12. On 21 August 2014, a

video hearing was held before an administrative law judge ("ALJ"), at which plaintiff, who was represented by counsel, and a vocational expert testified. Tr. 30-53. The ALJ issued a decision denying plaintiff's claim on 3 September 2014. Tr. 12-24. Plaintiff timely requested review by the Appeals Council. Tr. 7-8. On 22 October 2014, the Appeals Council admitted additional evidence (Tr. 732-33), but denied the request for review. Tr. 1-6. At that time, the decision of the ALJ became the final decision of the Commissioner. 20 C.F.R. § 404.981. Plaintiff commenced this proceeding for judicial review on 10 December 2014, pursuant to 42 U.S.C. § 405(g). (*See In Forma Pauperis* ("IFP") Mot. (D.E. 1); Order Allowing IFP Mot. (D.E. 4); Compl. (D.E. 5)).

**B.    Standards for Disability**

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months," the temporal criterion being known as the duration requirement. 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1509 (defining duration requirement); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id*. § 423(d)(3).

The disability regulations under the Act ("Regulations") provide a five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in [20 C.F.R.] § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in [20 C.F.R. pt. 404, subpt. P, app. 1] ["Listings"] . . . and meets the duration requirement, we will find that you are disabled. . . .
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity ["RFC"] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .
>
> (v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. . . . .

20 C.F.R. § 404.1520(a)(4).

The burden of proof and production rests with the claimant during the first four steps of the analysis. *Pass*, 65 F.3d at 1203. The burden shifts to the Commissioner at the fifth step to show that alternative work is available for the claimant in the national economy. *Id.*

In the case of multiple impairments, the Regulations require that the ALJ "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 404.1523. If a medically severe combination of impairments is found, the combined impact of those impairments must be considered throughout the disability determination process. *Id.*

## C. Findings of ALJ

Plaintiff was 48 years old on the alleged disability date and 51 years old on the date of the hearing. *See, e.g.*, Tr. 23 ¶ 7; 34. The ALJ found that she has at least a high school education, reflecting plaintiff's testimony that she has an associate's degree. Tr. 23 ¶ 8; 35. She has past relevant work as a patient care technician, phlebotomist, and medical technician. Tr. 23 ¶ 6.

Applying the five-step analysis of 20 C.F.R. § 404.1520(a)(4), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since the date of alleged onset of disability. Tr. 14 ¶ 2. At step two, the ALJ found that plaintiff had the following medically determinable impairments that were severe within the meaning of the Regulations: lumbar degenerative disc disease with radiculopathy; renal stones and stent placement; bladder cyst; hypothyroidism; anxiety; and depression. Tr. 14 ¶ 3. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that meets or equals one of the Listings. Tr. 15 ¶ 4.

The ALJ next determined that plaintiff had the RFC to perform light work—that is, to lift and carry up to 20 pounds occasionally and 10 pounds frequently, and to stand, walk, and sit for 6 hours in an 8-hour workday[1]—subject to various limitations. Tr. 16 ¶ 5. These limitations are:

---

[1] Title 20 C.F.R. § 404.1567(b) defines "light work" as involving

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b). The *Dictionary of Occupational Titles* ("DOT") defines "light work" as:

> Exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly (Constantly: activity or condition exists 2/3 or more of the time) to move objects. Physical demand requirements are in excess of those for Sedentary Work.

She can balance and climb occasionally. She can occasionally stoop, crouch, kneel, and crawl. She is unable to perform tasks that require any exposure to workplace hazards such as unprotected heights or dangerous machinery. The claimant has a decrease in the ability to concentrate on and attend to work tasks to the extent that she can only do simple, routine, repetitive tasks ["SRRTs"] (i.e. can apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form and deal with problems involving several concrete variables in or from standardized situations). The claimant's stress and anxiety so limit her that she can only deal with co-workers, supervisors, and the public occasionally. The claimant is unable to work at a production rate. The claimant is also unable to work at jobs requiring complex decision-making, constant change, or dealing with crisis situations.

Tr. 16 ¶ 5.

Based on his determination of plaintiff's RFC, the ALJ found at step four that plaintiff was not capable of performing her past relevant work. Tr. 22 ¶ 6. At step five, the ALJ accepted the testimony of the vocational expert and found that there were jobs in the national economy existing in significant numbers that plaintiff could perform, including jobs in the occupations of merchandise marker, mail clerk, and garment inspector. Tr. 23-24 ¶ 10. The ALJ accordingly concluded that plaintiff was not disabled from the alleged onset date, 1 February 2011, through the date of the decision, 3 September 2014. Tr. 24 ¶ 11.

### D.    Standard of Review

Under 42 U.S.C. § 405(g), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v.*

---

Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible. NOTE: The constant stress and strain of maintaining a production rate pace, especially in an industrial setting, can be and is physically demanding of a worker even though the amount of force exerted is negligible.

DOT app. C § IV, def. of "L-Light Work" (U.S. Dep't of Labor 4th ed. rev. 1991), http://www.oalj.dol.gov/libdot.htm (last visited 16 Nov. 2015). "Light work" and the other terms for exertional level as used in the Regulations have the same meaning as in the DOT. *See* 20 C.F.R. § 404.1567.

*Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Id*.

Where, as here, the Appeals Council considers additional evidence before denying the claimant's request for review of the ALJ's decision, "the court must 'review the record as a whole, including the [additional] evidence, in order to determine whether substantial evidence supports the Secretary's findings.'" *See, e.g., Felts v. Astrue*, No. 1:11CV00054, 2012 WL 1836280, at *1 (W.D. Va. 19 May 2012) (quoting *Wilkins v. Sec'y Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir.1991)). Remand is required if the court concludes that the Commissioner's decision is not supported by substantial evidence based on the record as supplemented by the evidence submitted at the Appeals Council level. *Id.* at *1-2.

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

## II.    OVERVIEW OF PLAINTIFF'S CONTENTIONS

Plaintiff contends that the ALJ's decision should be reversed and DIB awarded or, alternatively, that this case should be remanded for a new hearing on the grounds that the ALJ erred in his determinations regarding the opinions of plaintiff's treating psychiatrist, Valerie Murray, M.D., of the Highland Clinic; application of Listings 1.04, 12.04, and 12.06 to plaintiff; and plaintiff's RFC. Each ground is discussed in turn below.

## III.   ALJ'S EVALUATION OF DR. MURRAY'S OPINIONS

### A.    Applicable Legal Principles

The Regulations provide that opinions of treating physicians, including psychiatrists, on the nature and severity of impairments are to be accorded controlling weight if they are well supported by medically acceptable clinical and laboratory diagnostic techniques, and are not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2); *see Craig*, 76 F.3d at 590; *Ward v. Chater*, 924 F. Supp. 53, 55-56 (W.D. Va. 1996); Soc. Sec. Ruling 96-2p, 1996 WL 374188, at *2 (2 July 1996). The reason is that the treating sources are likely to be those "most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations,

such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(c)(2). If the medical opinions of the treating source are not given controlling weight, the Regulations prescribe factors to be considered in determining the weight to be ascribed, including the length and nature of the treating relationship, the supportability of the opinions, their consistency with the record, and any specialization of the provider. *Id.* § 404.1527(c)(2)-(6). An ALJ's decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Ruling 96-2p, 1996 WL 374188, at *5; *see also* 20 C.F.R. § 404.1527(d)(2). Opinions from medical sources on the ultimate issue of disability and other issues reserved to the Commissioner are not entitled to any special weight based on their source. *See* 20 C.F.R. § 404.1527(d); Soc. Sec. Ruling 96-5p, 1996 WL 374183, at *2, 5 (2 July 1996). But these opinions must still be evaluated and accorded appropriate weight. *See* Soc. Sec. Ruling 96-5p, 1996 WL 374183, at *3 ("[O]pinions from any medical source on issues reserved to the Commissioner must never be ignored. The adjudicator is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner.").

### B.    Dr. Murray's Treatment of Plaintiff

Dr. Murray began treating plaintiff on 21 March 2012 (*see* Tr. 712) and continued to treat her through at least 4 September 2014 (*see* Tr. 733).[2]   The ALJ summarized Dr. Murray's treatment of plaintiff and related events as follows:

---

[2] A complete set of the office visit notes and medical log from the Highland Clinic, where Dr. Murray worked, can be found at Tr. 689-712. While most of the notes appear to have been taken by Dr. Murray, a number were either

In March 2012, she began treatment with Valerie Murray, M.D., of the Highland Clinic. The claimant gave a history of panic attacks for the past five years. She also complained of mood swings, excessive worry, and impaired sleep. Dr. Murray diagnosed the claimant with anxiety and depression and she prescribed treatment with xanax, adderall, and trazodone through May 2013. During that period, the claimant spent some time in a domestic violence shelter. On March 2, 2013, the claimant was seen in the emergency room due to suicidal ideation. She was living in the shelter at that time. She said that she had been abused by all three of her husbands. She had also been arrested for domestic violence herself On that occasion, the claimant tested positive for marijuana and benzodiazepines (Exhibits 2F and 4F).

        . . . .

The claimant has continued under the care of Dr. Murray at the Highland Clinic through the present. She has been prescribed treatment with, variously, xanax, adderall, abilify, lexapro, celexa, and trazodone (Exhibits 8F and 15F).

Tr. 20 ¶ 5; 21 ¶ 5.

## C.    Dr. Murray's Opinions

The opinions of Dr. Murray are set forth, in part, in a Psychiatric Review Technique Form dated 13 August 2014. Tr. 715-28. The form states that it covers the period from the start of plaintiff's treatment by Dr. Murray to the date of the form. Tr. 715. In it, Dr. Murray indicates that plaintiff meets Listings 12.04 and 12.06. Tr. 718, 720. As discussed further below, meeting a listing alone establishes that a claimant is disabled. 20 C.F.R. § 404.1520(d). With respect to the so-called "paragraph B criteria" of the Listings, Dr. Murray found plaintiff to have extreme restriction of activities of daily living; extreme difficulties in maintaining social functioning; extreme difficulties in maintaining concentration, persistence, or pace; and one or two episodes of decompensation of extended duration.[3] Tr. 725. The "extreme" rating signifies

---

expressly generated by another provider (*see* Tr. 692-94) or were apparently generated by others because of differences in the handwriting (Tr., *e.g.*, 706). Duplicates of the notes appear elsewhere in the record.

[3] For the first three functional areas, the ratings, in order of increasing level of limitation, are none, mild, moderate, marked, and extreme. *See* 20 C.F.R. § 404.1520a(c)(4); Listing 12.00C1-3. The last area—repeated episodes of decompensation, each of extended duration—means three episodes within one year or an average of one every four months, each lasting at least two weeks. *See* Listing 12.00C4.

"a degree of limitation that is incompatible with the ability to do any gainful activity." 20 C.F.R. § 404.1520a(c)(4).

Dr. Murray also completed a medical source statement bearing the same date, entitled "Medical statement concerning depression for Social Security disability claim." Tr. 129-31. It includes a list of 20 work-related psychological functions, as to all but four of which Dr. Murray found plaintiff to be extremely impaired. Tr. 730-31. This statement also reiterates in a separate section the more general opinions that plaintiff has extreme restriction of activities of daily living; extreme difficulty in maintaining social functioning; deficiencies of concentration, persistence, or pace; and repeated episodes of deterioration or compensation. Tr. 729.

The ALJ gave the opinions of Dr. Murray no weight. Tr. 21-22 ¶ 5. He explained the basis for his assessment as follows:

> The claimant's treating physician, Dr. Murray, has provided medical source statements, dated August 13, 2014, indicating that the claimant's mental conditions meet the criteria of Listings 12.04 and 12.06 and that her ability to perform most of the mental demands of work is extremely impaired (Exhibits 16F -17F). The Administrative Law Judge notes that the opinion of a treating physician is entitled to great weight and may be disregarded only if there is persuasive contradictory evidence (Coffman v. Bowen, 829 F.2d 514 (4th Cir. 1987)). [1] However, in this instance, the treating physician's first opinion relates to an issue that is reserved to the Commissioner. [2] Also, her functional assessment is inconsistent with the totality of the medical evidence in the record. Therefore, no weight is given to these opinions. [3] It is apparent from the way the form was completed that Dr. Murray did not know what she was doing. While she purports to be evaluating the claimant's anxiety and depression, she checked A criteria from near[ly] every medical category including substance addiction disorder. [4] Moreover, she rated all of the B criteria as extreme, which is inconsistent with her own treatment notes, Exhibit 15F, which indicated only moderate limitations. This opinion is also contrary to that of Dr. Bing in Exhibit 6F.

Tr. 21-22 ¶ 5.

Plaintiff contends that the ALJ erred by not giving controlling weight to Dr. Murray's opinions because of the extended treatment relationship Dr. Murray had with plaintiff and the purportedly strong support for Dr. Murray's opinions in the record. The court finds no error.

The ALJ is correct that the first opinion of Dr. Murray that he references—that plaintiff meets Listings 12.04 and 12.06—is reserved to the Commissioner. The Regulations state: "Although we consider opinions from medical sources on issues such as whether your impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments in appendix 1 to this subpart, . . . the final responsibility for deciding these issues is reserved to the Commissioner." 20 C.F.R. § 404.1527(d)(2). That fact diminishes the weight that might otherwise be attributable to such opinions. Specifically, such opinions are not entitled to any special weight because of their source. *See id.* § 404.1527(d)(3); Soc. Sec. Ruling 96-5p, 1996 WL 374183, at *2, 3 (2 July 1996). The ALJ did not err in discounting Dr. Murray's opinion on Listings 12.04 and 12.06 on this basis.

Substantial evidence supports the ALJ's finding that Dr. Murray's "functional assessment"—whether such assessment is deemed to be her ratings on the paragraph B criteria or her ratings of the 20 more specific functions—is inconsistent with the totality of the medical evidence. Such evidence includes the opinion of state agency non-examining psychological consultants Keith O. Noles, Ph.D., and Eleanor E. Cruise, Ph.D., dated 6 August 2013 and 3 December 2013, respectively, that plaintiff was mentally capable of performing SRRTs with certain limitations. Tr. 64-65, 78, 82. The ALJ gave moderate weight to this opinion. Tr. 22 ¶ 5. Other medical evidence supporting this determination by the ALJ includes the report of psychologist Richard J. Bing, Ph.D., and treatment notes of Dr. Murray, as discussed below.

Substantial evidence also supports the ALJ's related finding that Dr. Murray's "extreme" ratings are inconsistent with the opinions of Dr. Bing, who performed a consultative examination of plaintiff on 24 July 2013. Tr. 545-50. He gave her a global assessment of functioning ("GAF") score of 56, indicating moderate impairment of function.[4] Tr. 550. Dr. Bing noted that plaintiff has the ability "at least to perform simple and repetitive types of tasks," although her anxiety in crowds and difficulty tolerating work stress and pressure could adversely affect her

---

[4] The GAF scale measures a person's overall psychological, social, and occupational functioning. Am. Psych. Assn., *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. text rev. 2000) ("DSM–IV–TR"). Selected GAF scores have the following meanings:

90-81 Absent or minimal symptoms (e.g., mild anxiety before an exam), good functioning in all areas, interested and involved in a wide range of activities, socially effective, generally satisfied with life, no more than everyday problems or concerns (e.g., an occasional argument with family members).

80-71 If symptoms are present, they are transient and expectable reactions to psychosocial stressors (e.g., difficulty concentrating after family argument); no more than slight impairment in social, occupational, or school functioning (e.g., temporarily falling behind in schoolwork).

70-61 Some mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships.

60-51 Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).

50-41 Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job).

40-31 Some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school).

30-21 Behavior is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) OR inability to function in almost all areas (e.g., stays in bed all day; no job, home, or friends).

DSM–IV–TR 34.

work performance. Tr. 550. The ALJ gave moderate weight to Dr. Bing's opinions regarding plaintiff's anxiety and stress tolerance. Tr. 22 ¶ 5.

The ALJ's further finding that Dr. Murray's "extreme" findings are inconsistent with her own treatment notes is also supported by substantial evidence. Having carefully reviewed all of Dr. Murray's treatment notes, the court finds that they can reasonably be interpreted as showing that the limitations resulting from her mental impairments were at less than the "extreme" level. While proper assessment of the notes requires that they be considered as a whole, specific entries tending to mitigate the severity of the limitations imposed on plaintiff include those in which plaintiff affirms the efficacy of her medication, the lack of side effects from it, interest in obtaining employment, and actual retention of employment. *See* Tr., *e.g.*, 695, 696, 698, 700, 703, 705, 706.

Lastly, substantial evidence supports the ALJ's determination that Dr. Murray did not know how to properly complete the Psychiatric Review Technique form. Although, as he found, Dr. Murray indicates at the outset of the form (Tr. 715) that her evaluation is based on only the criteria in Listings 12.04 for affective disorders and 12.06 for anxiety-related disorders, she indicates that plaintiff met paragraph A criteria for Listings 12.02 for organic mental disorders; 12.03 for schizophrenic, paranoid and other psychotic disorders; 12.08 for personality disorders; and 12.09 for substance addiction disorders (Tr. 716, 717, 722, 723). It was not improper for the ALJ to discount the weight given to the opinions asserted by Dr. Murray on the basis of her apparent misunderstanding of the form.

While rejecting Dr. Murray's opinions, the ALJ manifestly did not disregard the mental impairments reflected in her treatment notes underlying those opinions. As noted, he found plaintiff to have the severe impairments of anxiety and depression. Tr. 14 ¶ 3. He also included

numerous restrictions in his RFC determination responsive to plaintiff's mental impairments—namely, performance of only SRRTs; only occasional contact with coworkers, supervisors, and the public; no production-rate work; no work requiring complex decision-making, constant change, or dealing with crisis situations. Tr. 16 ¶ 5.

The court concludes that the ALJ's assessment of Dr. Murray's opinions was proper. Plaintiff's challenge to the ALJ's decision on this ground should accordingly be rejected.[5]

## IV.    ALJ'S LISTING DETERMINATIONS

### A.    Listing Requirements

The Listings consist of impairments, organized by major body systems, that are deemed sufficiently severe to prevent a person from doing any gainful activity. 20 C.F.R. § 404.1525(a). Therefore, if a claimant's impairments meet a listing, that fact alone establishes that the claimant is disabled. *Id*. § 404.1520(d). An impairment meets a listing if it satisfies all the specified medical criteria. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); Soc. Sec. Ruling 83-19, 1983 WL 31248, at *2 (1983). The burden of demonstrating that an impairment meets a listing rests on the claimant. *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

Even if an impairment does not meet the listing criteria, it can still be deemed to satisfy the listing if the impairment medically equals the criteria. 20 C.F.R. § 404.1525(c)(5). To establish such medical equivalence, a claimant must present medical findings equal in severity to all the criteria for that listing. *Sullivan*, 493 U.S. at 531; 20 C.F.R. § 404.1526(a) (medical

---

[5] The additional record submitted by Dr. Murray on 4 September 2014, the day after issuance of the ALJ decision, indicates that plaintiff has been feeling suicidal and cutting her left forearm. Tr. 733. She states that plaintiff "is not mentally stable enough to live in her car." Tr. 733. While this document lends support to plaintiff's allegations as to the severity of her mental impairments, it does not negate a finding that substantial evidence supports the ALJ's determinations regarding those impairments. As noted, remand is required only when the ALJ's decision is not supported by substantial evidence based on the record as supplemented by the evidence submitted at the Appeals Council level, and this one document considered with the others before the ALJ does not establish a lack of substantial evidence. Notably, Dr. Murray's treatment notes consistently indicated that plaintiff was not suicidal (*see* Tr. 689-91, 695-700, 703-06, 708-09, 711-12), with the sole exception of a note from 1 March 2013 indicating that while she did have suicidal ideation (and was subsequently hospitalized), she had run out of xanax (Tr. 702).

findings must be at least equal in severity and duration to the listed criteria). "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Sullivan*, 493 U.S. at 531.

"[W]hen an ALJ finds that a claimant has a severe impairment and the record contains evidence of related 'symptoms [that] appear to correspond to some or all of the requirements of [a listing, the ALJ must] . . . explain the reasons for the determination that [the claimant's severe impairment] did not meet or equal a listed impairment.'" *Jones ex rel. B.J. v. Astrue*, No. 1:09CV45, 2012 WL 1267875, at *2 (M.D.N.C. 16 Apr. 2012) (quoting *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986)), *rep. & recomm. adopted by* Order (22 May 2012) (D.E. 19); *Money v. Astrue*, No. 1:08cv895, 2011 WL 3841972, at *8 (M.D.N.C. 26 Aug. 2011) ("The ALJ also may not include a conclusory statement that the claimant does not have an impairment or combination of impairments that meets a listed impairment." (citing *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989))); *cf. Kelly v. Astrue*, No. 5:08-CV-289-FL, 2009 WL 1346241, at *5 (E.D.N.C. 12 May 2009) ("[T]he ALJ is only required to explicitly identify and discuss relevant listings of impairments where there is 'ample evidence in the record to support a determination' that an impairment meets or medically equals a listing." (citations omitted)).

**B.    Listing 1.04**

Listing 1.04 relates to spinal disorders. It provides:

1.04  Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

A.     Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or

reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or

B.      Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or

C.      Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

Listing 1.04.  "Inability to ambulate effectively" generally means "having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities."  Listing 1.00B2b(1). Thus, to satisfy Listing 1.04, a claimant must satisfy the diagnostic definition and the criteria in at least one of paragraphs A, B, or C.

After making the general finding that plaintiff's impairments do not meet or medically equal any listing, the ALJ found that "[t]he claimant does not have symptoms or signs of a nerve root compression syndrome, arachnoiditis, or lumbar stenosis as required for degenerative disc disease to meet Listing 1.04," specifically, the criteria in paragraphs A, B, and C, respectively. Tr. 15 ¶ 4.  The ALJ does not address the diagnostic definition in Listing 1.04.  Plaintiff does not specify which paragraph of this listing she contends she satisfies.   In any event, substantial evidence supports the ALJ's determination that her impairments do not satisfy the criteria in any of the three paragraphs.

As to the paragraph A criteria, the medical records do not appear to contain any diagnosis of plaintiff for nerve root compression syndrome, nor has plaintiff alleged the existence of any such diagnosis.  *See* Listing 1.04A.  Moreover, while at some examinations plaintiff was found to have signs included in Listing 1.04A, such as limitations in range of motion of the lower back,

muscle weakness, and positive straight leg raising testing, she did not demonstrate them consistently. *See* Tr., *e.g.*, 337, 445, 481 (normal or full range of motion); 337 (normal muscle strength); 295, 337, 358, 382, 686 (negative straight leg raising); *see also* Tr. 19 ¶ 5 (ALJ's reference to various normal musculoskeletal findings).

With respect to the paragraph B criteria, the medical records also do not appear to contain any diagnosis of plaintiff for arachnoiditis. *See* Listing 1.04B. Plaintiff did not identify any such diagnosis in the record.

Regarding the paragraph C criteria, while plaintiff was diagnosed with spinal stenosis on 11 November 2011 (*see* Tr. 677) and 30 April 2014 (*see* Tr. 654), there was no finding on either occasion that it resulted in pseudoclaudication, as required to satisfy Listing 1.04C. The spinal stenosis found on 30 April 2014 was described as "mild." Tr. 654. No other medical records appear to diagnose plaintiff with spinal stenosis. As to plaintiff's ability to ambulate, she reported on 12 July 2013 that she uses a cane only occasionally and, in those instances, on long walks. Tr. 209. There is no evidence that she was prescribed a cane.

Plaintiff has therefore failed to demonstrate that the ALJ erred in his determination that she did not satisfy the paragraph A, B, and C criteria of Listing 1.04 and that she thereby failed to satisfy the listing. Her challenge to this determination should accordingly be rejected.

C.      **Listing 12.04 and 12.06**

As indicated, Listing 12.04 relates to affective disorders. The paragraph A criteria require medically documented persistence of depressive syndrome, manic syndrome, or bipolar syndrome, each meeting various requirements. Listing 12.04A. The paragraph B criteria require that claimant's mental impairments at issue result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning;

marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. Listing 12.04B. The paragraph C criteria require a medically documented history of a chronic affective disorder of at least two years' duration, again meeting various requirements. Listing 12.04C. Listing 12.04 is met or equaled by satisfying the paragraph A and B criteria, or the paragraph C criteria. Listing 12.04.

As also noted, Listing 12.06 relates to anxiety-related disorders. The paragraph A criteria require, subject to additional specific requirements, medically documented findings of generalized persistent anxiety, a persistent irrational fear, recurrent severe panic attacks, recurrent obsessions or compulsions, or recurrent and intrusive recollections of a traumatic experience. Listing 12.06A. The paragraph B criteria are the same as under Listing 12.04 for the mental impairments at issue under Listing 12.06. Listing 12.06B. The paragraph C criteria require the complete inability to function outside the area of one's home as a result of a condition in paragraph A. Listing 12.06C. Listing 12.06 is met or equaled by satisfying the paragraph A and B criteria, or the paragraph A and C criteria. Listing 12.06.

The ALJ did not explicitly address the paragraph A criteria of either listing. Instead, he found that plaintiff did not meet or medically equal either listing for failure to satisfy the paragraph B and C criteria. Plaintiff argues that the ALJ erred in his analysis of these criteria and that the ALJ should have found that he satisfied both listings. The court finds no error.

The ALJ explained his reasoning concerning the paragraph B criteria for Listings 12.04 and 12.06 as follows:

> The severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of Listings 12.04 and 12.06. In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied.
>     . . . .

In activities of daily living, the claimant has mild restriction. She is able to perform self-care activities and other activities of daily living independently.

In social functioning, the claimant has moderate difficulties. She does not like to be around others but she is able to interact appropriately with family, friends, and her medical treatment sources.

With regard to concentration, persistence or pace, the claimant has moderate difficulties. She complains of problems with focus but she is able to complete tasks in a timely manner. She manages her medical appointments and her medications.

As for episodes of decompensation, the claimant has experienced no episodes of decompensation, which have been of extended duration. She has not required any prolonged periods of inpatient or emergency outpatient treatment for her mental conditions.

Because the claimant's mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria are not satisfied.

Tr. 15 ¶ 4.

Plaintiff contends that the opinions of Dr. Murray establish that plaintiff meets the paragraph B criteria. Tr. 715-28. As set forth above, however, the ALJ acted properly in giving no weight to her opinions.

Plaintiff also points to selected medical records and related testimony by plaintiff as demonstrating satisfaction of the paragraph B criteria. The court finds, though, that substantial evidence supports the ALJ's determination that they were not satisfied. The supporting evidence includes the evidence the ALJ himself cites in support of his determination. Additional supporting evidence includes the opinions of Dr. Bing. As discussed above, he gave plaintiff a GAF score of 56, indicating moderate symptoms. Tr. 550. There are also the findings by Dr. Noles and Dr. Cruise that plaintiff had no restriction on activities of daily living; mild difficulties in maintaining social functioning; moderate difficulties in maintaining concentration,

persistence, or pace; and no repeated episodes of decompensation, each of extended duration.

Tr. 60, 77.

The ALJ explained the basis for his determination on the paragraph C criteria as follows:

The undersigned has also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria. The record does not establish a residual disease process resulting in marginal adjustment, inability to function outside a highly supportive living arrangement, or complete inability to function independently outside the home.

Tr. 15 ¶ 4.

Plaintiff cites Dr. Murray's opinions in support of her contention that she satisfies the paragraph C criteria. As discussed, the ALJ properly discounted those opinions. The ALJ's finding on the paragraph C criteria is otherwise supported by substantial evidence. This evidence includes the evidence that plaintiff's mental impairments were controlled by medication, which tends to demonstrate that she possessed the ability to function independently while compliant with her medications. *See also Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) ("If a symptom can be reasonably controlled by medication or treatment, it is not disabling."). The ALJ, in fact, found that plaintiff's mental impairments were adequately controlled by medication. Tr. 21 ¶ 5.

Plaintiff has therefore failed to show that the ALJ erred in his determination that she did not satisfy the paragraph B and C criteria of Listings 12.04 and 12.06. Because satisfaction of these listings requires satisfaction of at least one of these sets of criteria, the court concludes that the ALJ did not err in determining that plaintiff failed to satisfy these listings. Her challenge to that determination should accordingly be rejected.

## V.     ALJ'S RFC DETERMINATION

Finally, plaintiff argues that the purported failure by the ALJ to properly evaluate the opinions of Dr. Murry and plaintiff's credibility rendered his RFC determination erroneous. Because the court has found that the ALJ's evaluation of Dr. Murray's opinions was proper, that evaluation does not undermine the propriety of the RFC determination.

As to plaintiff's credibility, she testified at the hearing to the effect that her mental and physical impairments are disabling. *See* Tr. 34-48. The ALJ reviewed her testimony extensively in his decision. *See* Tr. 17-18 ¶ 5. The ALJ concluded that plaintiff's allegations regarding her impairments were not fully credible. *See* Tr. 21 ¶ 5. The court finds no error in the ALJ's assessment.

An ALJ's assessment of a claimant's credibility involves a two-step process. *Craig*, 76 F.3d at 593-96; 20 C.F.R. § 404.1529(a)-(c), Soc. Sec. Ruling 96–7p, 1996 WL 374186, at *1 n.1, 2 (2 July 1996). First, the ALJ must determine whether plaintiff's medically documented impairments could cause plaintiff's alleged symptoms. Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *2. Next, the ALJ must evaluate the extent to which the claimant's statements concerning the intensity, persistence, or functionally limiting effects of the symptoms are consistent with the objective medical evidence and the other evidence of record. *See id.; see also* 20 C.F.R. § 404.1529(c)(3) (setting out factors in addition to objective medical evidence in evaluation of a claimant's pain and other symptoms). If the ALJ does not find plaintiff's statements to be credible, the ALJ must cite "specific reasons" for that finding that are "supported by the evidence." Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *2, 4; *Jonson v. Colvin*, No. 12cvl742, 2013 WL 1314781, at *7 (W.D. Pa. 28 Mar. 2013) ("If an ALJ concludes

the claimant's testimony is not credible, the specific basis for such a conclusion must be indicated in his or her decision."); *Dean v. Barnhart*, 421 F. Supp. 2d 898, 906 (D.S.C. 2006).

Here, the ALJ made the step-one finding that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." Tr. 21 ¶ 5. But at step two, he found that her "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely for the reasons explained in this decision." Tr. 21 ¶ 5.

The ALJ summarized these reasons as follows:

The claimant has degenerative disc disease of the lumbosacral spine with symptoms and signs of radiculopathy. However, the MRIs do not establish ongoing spinal cord compression. Further, physical examinations have also revealed that she does not have evidence of ongoing nerve root compression, which might he expected based on the degree of pain alleged. Further, the claimant has not required such aggressive measures for symptom relief as ongoing use of steroid medication and epidural injections, application of TENS equipment, or enrollment in physical therapy program. She has not been treated in a pain management program since 2013. The claimant currently requires only over-the-counter medication for symptom relief. The treatment regimen, therefore, indicates that the claimant's symptoms are not as intractable as alleged.

The claimant's renal and ureteral stones and her bladder cyst have been successfully treated and she does not have any residual clinical abnormalities related to those conditions. Her hypothyroidism has also been adequately managed with use of synthroid and she has not developed any complications from this condition.

The claimant's mental conditions have been successfully treated by Dr. Murray with psychiatric medications. The claimant does not have any significant[6] mental status abnormalities. She is able to care for her own personal needs and to manage her financial affairs.

Tr. 21 ¶ 5. Substantial evidence supports these findings, including evidence reviewed by the ALJ in his decision. This includes portions of plaintiff's own testimony. For example, she testified that she lives alone, currently in her vehicle, but had previously lived with her sister for

---

[6] In context, the court reads the term "significant" as used here to signify as the ALJ states in the following sentence that plaintiff's mental impairments do not prevent her from caring for her own personal needs, managing her financial affairs, and otherwise performing other tasks required for substantial gainful activity.

two and a half years (Tr. 17 ¶ 5 (referencing Tr. 35)); has a driver's license and drives daily (Tr. 17 ¶ 5 (referencing Tr. 35)); stopped working in 2011 to move to New York to provide care for her grandson (Tr. 17 ¶ 5 (referencing Tr. 36-37); and does not like going out in public or dealing with people, but attends and manages her medical treatment independently (Tr. 18 ¶ 5 (referencing Tr. 39, 46)).

Notably, the ALJ included limitations in his RFC determination addressing plaintiff's mental and physical limitations discussed in her testimony. Inclusion of these limitations substantiates that the ALJ did not reject completely plaintiff's testimony. The court concludes that plaintiff's attack on the ALJ's RFC determination fails.

## VI.    CONCLUSION

After careful consideration of the ALJ's decision and the record in this case, the court concludes that the decision is supported by substantial evidence of record, considering the record as supplemented by the Appeals Council, and based on proper legal standards. IT IS THEREFORE RECOMMENDED that the Commissioner's motion (D.E. 27) for judgment on the pleadings be ALLOWED, plaintiff's motion (D.E. 24) for judgment on the pleadings be DENIED, and the final decision of the Commissioner be AFFIRMED.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until 30 November 2015 to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. §

636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Wright v. Collins*, **766 F.2d 841, 846-47 (4th Cir. 1985).**

Any response to objections shall be filed within 14 days after filing of the objections.

This 16th day of November 2015.

James E. Gates
United States Magistrate Judge